UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
CHRISTIAN KILLORAN, on behalf of his
Son, A.K., CHRISTIAN KILLORAN,
and TERRIE KILLORAN,

                Plaintiffs,

                                      MEMORANDUM & ORDER
                                      19-CV-6663(JS)(SIL)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT,
MICHAEL RADDAY as Superintendent,
SUZANNE M. MENSCH, JAMES HULME,
JOYCE L. DONNESON, GEORGE R. KAST, JR.,
and HALSEY C. STEVENS, as Board
of Education Members,

                Defendants.
----------------------------------x
APPEARANCES:
For Plaintiffs:      Christian Killoran, Esq., pro se
                    Terrie Killoran, pro se
                    132-13 Main Street
                    Westhampton, New York 11978


For Defendants:     Scott J. Kreppein, Esq.
                    DEVITT SPELLMAN BARRETT, LLP
                    50 Route 111
                    Smithtown, New York 11787

SEYBERT, District Judge:

        Pro se plaintiffs Christian Killoran and Terrie Killoran

(together, "the Parents"), individually and as parents to A.K., a

child with Down Syndrome, (collectively, the "Plaintiffs")

commenced this action against defendants Westhampton Beach School

District, ("Westhampton" or the "District"), Michael Radday, ("the

Superintendent"), Suzanne M. Mensch, James Hulme, Joyce L.

Donneson, George R. Kast, Jr., and Halsey C. Stevens (together, the "School Board," and collectively with Westhampton and the Superintendent, "Defendants"). Plaintiffs' Complaint purports to allege an equal protection claim pursuant to 42 U.S.C. § 1983 ("Section 1983"). (See Compl., ECF No. 1.) Plaintiffs seek compensatory education, compensatory and punitive damages, and equitable relief.

Currently pending before the Court is Defendants' motion to dismiss the Complaint (hereafter, "Dismissal Motion"). (See ECF No. 12.) After careful consideration, for the reasons set forth below, Defendants' Dismissal Motion is GRANTED.

BACKGROUND[1]

I.   Relevant Litigation History

This action is one in a series of civil rights litigations brought by Plaintiffs against Defendants concerning the educational placement of Plaintiffs' son, A.K. Of particular relevance, is this Court's September 7, 2019 Memorandum and Order in A.K. v. Westhampton Beach School District, No. 17-CV-0866, 2019 WL 4736969 (E.D.N.Y. Sept. 27, 2019), dismissing Plaintiffs'

---

[1] The facts set forth herein are taken from the Complaint, as well as documents attached to it as exhibits, and are accepted as true for purposes of the instant motion. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Additionally, a document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

Section 1983 equal protection-based claim without prejudice
(hereafter, the "2019 Order"). (See Ex. P-1, 2019 Order, ECF No.
1-1, attached to Compl;[2] see also Compl. ¶19.)[3] In that case, with
regard to Plaintiffs' class of one equal protection claim, this
Court found:

> [T]here is no question that Plaintiffs have failed to
> plausibly allege that A.K. was treated differently from
> any similarly situated individual. Rather, in wholly
> conclusory fashion, Plaintiffs allege that Defendants
> 'reflexively outsource[ ] the post-elementary education
> of every single alternatively assessed special education
> child like A.K. . . . Defendants have also displayed a
> unique and particularly offensive position towards A.K.
> In refusing A.K.'s enrollment, A.K. became the only
> child, including all special education children, to ever
> have his basic enrollment rights denied by Defendants'.
> . . . Yet Plaintiffs fail to allege how any
> alternatively assessed child's circumstances are prima
> facie identical to A.K.'s or how A.K. was treated
> differently from any such child. . . . Thus, because
> Plaintiffs fail to identify any similarly situated
> individual at all, much less one who was treated
> differently from A.K., Plaintiffs' equal protection
> claim is DISMISSED WITHOUT PREJUDICE.

Ex. P-1 at 49-50 (internal quotation marks omitted).[4]

---

[2] Plaintiffs attached three exhibits to their Complaint: Exhibit
P-1 (ECF No. 1-1); Exhibit P-2 (ECF No. 1-2); and, Exhibit P-3
(ECF No. 1-3). Hereafter, citation to those exhibits will simply
be by their respective "P-[#]".

[3] Additionally, the Court's September 2019 Order denied
Defendants' motion to dismiss Plaintiffs' Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101, and Section 504 of
the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), claims
against the District.

[4] The Court cites to the electronic document filing system ("ECF")
pagination throughout this Memorandum and Order.

II.   The Instant Suit

        Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' more recent Complaint in which they re-assert a class of one equal protection claim pursuant to Section 1983.   In the interest of brevity, the Court will assume familiarity with the facts and only addresses those facts relevant to the instant motion.

        A.K., a seventeen-year-old student at the time the instant Complaint was filed, was born with Down Syndrome. (Compl. ¶1.)   Plaintiff resides in the Remsenburg-Speonk School District which contains only one elementary school and has contracts with Defendant District as well as other districts to educate its middle and high school students. (Compl.¶¶8-10; Ex. P-1 at 5.)   Despite Plaintiffs' interest in sending A.K. to Defendant District for middle school for the 2015-2016 academic year, Remsenburg's initial individualized education plan ("IEP") for A.K. recommended his placement in Eastport School District.  (See Ex. P-2, Jan. 26, 2017 Order of Independent Hearing Officer Nancy M. Lederman, at 7-9.)   Following Plaintiffs' administrative challenge of Remsenburg's placement decision, Remsenburg modified A.K.'s IEP and recommended that Westhampton implement an individualized program to accommodate his placement.   (See id. at 9-10.) Westhampton declined to enroll A.K. and additional administrative

proceedings followed with respect to the 2015-2016 and 2016-2017 school years.  (See id. at 9-10.)

At the direction of Independent Hearing Officer ("IHO") Nancy M. Lederman ("IHO Lederman"), in September 2016, Westhampton enrolled A.K. and convened a Committee on Special Education ("CSE").  (Ex. P-1 at 9.)  The CSE recommended that A.K. be placed in a program in Eastport for the 2016-2017 school year.  (See id.) Plaintiffs again administratively challenged the District's recommendation.  (See id.)  In her January 26, 2017 decision, IHO Lederman found that Westhampton had failed to provide A.K. with a free and appropriate education ("FAPE") for the 2015-2016 and 2016-2017 academic years.  (Compl.¶29; Ex. P-2 at 37-42.)  IHO Lederman noted that there was "considerable misunderstanding among all the parties about the obligation of Westhampton [ ] concerning A.K." and that both parties were "equally culpable."  (Ex. P-2 at 11.)

On April 12, 2017, Plaintiffs filed another administrative complaint against Westhampton challenging the recommendation made by the District's CSE for A.K.'s placement outside the District for the 2016-2017 and 2017-2018 school years. (Ex. P-1 at 18.)  IHO James A. Monk ("IHO Monk") found no FAPE violation and concluded that the May 31, 2017 IEP developed by the CSE was reasonably calculated to enable A.K. to receive educational benefits.  (See id. at 19.)  IHO Monk noted that the parties did not disagree about what constituted the least restrictive

5

environment ("LRE") for A.K., but that Plaintiffs were insistent that such program must be offered in-district, even if A.K. was the only student in class.  (See id. at 20.)  The IHO concluded that Westhampton was not required to create a program suitable for A.K.'s needs and ordered the parties to complete the placement process for 2017-2018, ruling that "[t]he parents' insistence on an in-district program and placement are not a viable alternative for the 2017-2018 school year and should NOT be a consideration for placement by the CSE."  (Id. at 20-21.)

On appeal, State Review Officer ("SRO") Steven Krolak ("SRO Krolak") upheld IHO Monk's finding that there was no FAPE violation for the 2016-2017 and 2017-2018 school years.  (See id. at 23.)  Specifically, SRO Krolak found that "Westhampton attempted to provide Plaintiffs with two options for out-of-district placements that were capable of implementing the special class placement recommended on [A.K.'s] IEP for the 2017-18 school year," however, "rather than investigate the out of district options, the parent[s] sent a letter to each CSE participant warning them not to attend the June 2017 CSE meeting."  (Id. at 22 (internal quotation marks omitted).)  SRO Krolak concluded that Westhampton did not deny A.K. a FAPE by recommending a special class placement and attempting to locate one in a neighboring school district.  (Id. at 23.)  However, SRO Krolak noted that "while at the time of the hearing in this matter, placement in the district was not a

viable option, this may not always be the case," and therefore "overturned the portion of the IHO's order that directed that when the CSE reconvenes to recommend an appropriate placement for [A.K.], the CSE should not consider placement of [A.K.] in the district." (Id. (internal quotation marks omitted).)

On March 8, 2018, and June 6, 2018 respectively, Plaintiffs filed two administrative complaints challenging the District's recommendations for A.K. for the 2017-2018 academic year. (Ex. P-3, Aug. 3, 2018 Order of IHO Leah L. Murphy, at 2.) Plaintiffs sought to have A.K. placed in a newly formed special education program being implemented at the District's middle school. (Compl. ¶¶177-79.) Admittedly, the students in this newly formed special education class were younger than A.K, who was of high school age. (Compl. ¶¶178, 180; Ex. P-3 at 4-6.) Therefore, pursuant to the Regulations of the Commissioner of Education, an age waiver was required to be submitted to the Department of Education for A.K. to be considered for admission to this middle school program. (Ex. P-3 at 9.) Defendant District had refused Plaintiffs' request to apply for an age waiver claiming that it would be "inappropriate" to apply for the variance concluding that aside from "exceeding [ ] the 36-month requisite between the youngest and oldest child in the class is the fact that the class [i]s composed of middle school grade [students] while A.K. should be in a high school program placement." (Id. at 8.)

7

Following the consolidation of Plaintiffs' complaints, IHO Leah L. Murphy ("IHO Murphy") concluded that "[t]he District violated A.K. and his parents' procedural rights pursuant to the IDEA, when it failed to include them in a discussion regarding a decision to apply for an age variance . . . and rejected their request to seek a waiver." (Id. at 3, 24.)  On August 3, 2018, IHO Murphy issued an interim order compelling Defendant District to apply for an age waiver to "facilitate A.K.'s potential educational program and placement within [the newly formed] alternatively assessed program being implemented within the District middle school for the 2018/2019 school year." (Compl. ¶178; Ex. P-3 at 4.)  In compliance with IHO Murphy's order, the District submitted the age variance request to the New York State Education Department on August 22, 2018. (Ex. B, Aug. 22, 2018 Age Variance Application, ECF No. 12-4, attached to Kreppein Decl.[5])  On September 19, 2018, the New York State Education Department denied the Age Variance Application finding it "lacks an educational justification that supports exceeding the 36-month age range in this class." (Ex. C, Sept. 19, 2018 Variance Denial Letter.)

---

[5] Defendants attached three exhibits to the Declaration of Scott J. Kreppein, Esq. (see ECF No. 12-1), submitted in support of their Dismissal Motion: Exhibit A (ECF No. 12-3); Exhibit B (ECF No. 12-4); and, Exhibit C (ECF No. 12-4).  Hereafter, citation to those exhibits will simply be by their respective letter, i.e., Ex. A, Ex. B, or Ex. C.

On November 26, 2019, Plaintiffs filed the instant Complaint against Defendants alleging an equal protection claim pursuant to Section 1983. (See Compl.) On March 13, 2020, Defendants filed their Dismissal Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim (see Defs. Mot.; see also ECF No. 12-2, Supp. Memo.). Plaintiffs filed their opposition to the Motion on March 19, 2020. (See ECF No. 13, Opp'n.) On April 27, 2020, Defendants filed a reply brief in support of their Dismissal Motion. (See ECF No. 14, Reply.)

## DISCUSSION

I. Motion to Dismiss Standard of Review

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately,

the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), which has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers, 282 F.3d at 152–53 (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

Further, it is well-established that pleadings filed by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Where, as here, an attorney is proceeding pro se, however, his pleadings are not entitled to the "special consideration which the courts customarily grant to pro se parties." Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted); see Killoran v. Westhampton Beach School District, No. 19-CV-3298, 2020 WL 4740498, at *4 (June 24, 2020) ("[T]he Court takes notice that Plaintiff [Christian Killoran], although

proceeding pro se, is a registered attorney.") report and
recommendation adopted, 2020 WL 4743189 (July 27, 2020).
Accordingly, although Plaintiffs are proceeding pro se, their
Complaint is held to the same standards as pleadings drafted by
lawyers. See Bazadier, 464 F. App'x at 12.

II.  Plaintiffs' Equal Protection Claim

        Plaintiffs allege that Defendants' "summarily refus[al]"
to enroll A.K. upon his graduation from Remsenburg, (Compl. ¶¶44,
62), "illuminates how A.K. was treated as a 'class of one' and how
the defendants' conduct constituted a violation of A.K.'s 'equal
protection' rights." (Compl. ¶69.)  Plaintiffs claim that "every
'special education student', other than A.K., and irrespective of
any disability that they may have possessed, was nevertheless at
least afforded school enrollment." (Compl. ¶60.)  For the reasons
that follow, the Court finds that Plaintiffs fail to allege an
equal protection claim.

        Pursuant to the Fourteenth Amendment's Equal Protection
Clause, the Government must treat "all similarly situated people
alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494,
499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living
Ctr., 473 U.S. 432, 439 (1985)).  The protections afforded by the
Equal Protection Clause extend to "individuals who allege no
specific class membership[,]" known as "class of one claims[,]"
"where the plaintiff alleges that []he has been intentionally

11

treated differently from others similarly situated and that there
is no rational basis for the difference in treatment." Id.
(quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)
(per curiam).

The standard for determining whether another person's
circumstances are similar to the plaintiff's is whether they are
"prima facie identical." Hu v. City of N.Y., 927 F.3d 81, 92 (2d
Cir. 2019) (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d
Cir. 2005)) (internal quotation marks omitted); Clubside, Inc. v.
Valentin, 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one
plaintiffs must show an extremely high degree of similarity between
themselves and the persons to whom they compare themselves.") More
specifically, a plaintiff must establish that he and a comparator
are "prima facie identical" by showing that "(i) no rational person
could regard the circumstances of the plaintiff to differ from
those of a comparator to a degree that would justify the
differential treatment on the basis of a legitimate government
policy; and (ii) the similarity in circumstances and difference in
treatment are sufficient to exclude the possibility that the
defendant acted on the basis of a mistake." Ruston v. Town Bd.
for Town of Skaneateles, 610 F.3d 55, 59-60 (2d Cir. 2010), cert.
denied, 562 U.S. 1108 (2010) (quoting Clubside, 468 F.3d at 159).

To survive a motion to dismiss, a complaint must make
sufficient factual allegations in support of this similarity

requirement.  See Ruston, 610 F.3d at 59 (citing Iqbal, 556 U.S. at 678.)  Courts require "more than a bare allegation that other individuals were treated differently."  Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013) (citation omitted).  "[T]he court must [ ] determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated."  Id. at 434 (quoting Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

        Plaintiffs have not met this standard.  In support of their equal protection claim, Plaintiffs identify two groups of students as proposed comparators.  The first group of alleged comparators, which Plaintiffs label the "pre-enrollment class", include five named "special education students" identified as "Remsenburg graduates" prior to A.K. who applied for enrollment within the Defendant District, but, unlike A.K., were enrolled by the District.  (Compl. ¶¶75-80; Opp'n at 11-12.)  Plaintiffs contend that "the only differentiating factor between A.K. and all of those students who preceded him, was that A.K. had voiced his intention to legally challenge the defendants historic and discriminatory practice and/or policy of 'outsourcing' the educational placement of every single 'alternatively assessed

special education student[]' that had ever come before him."
(Compl. ¶105 (emphasis omitted).)

The second group of alleged comparators, the "post-enrollment class", consists of two sub-groups. First is the subset of "'alternatively assessed special education students' who, [unlike A.K.], following enrollment [in the District], were afforded access to non-pre-determinative CSEs." (Opp'n at 11, 13; see also Compl. ¶¶76-81, 135-37.) Second are three students identified by name, one of whom, like A.K., has Down Syndrome, who are being educated in District in the "'newly formed' post-elementary aged 'alternatively assessed' special education class," while A.K. is not. (Compl. ¶¶151-56, 173-76.)

A. Pre-enrollment Class

With regard to the "pre-enrollment class," Plaintiffs merely identify the "Remsenburg graduates" "special education students" by name, but fail to set forth any facts that identify how the circumstances of these students are similar to A.K.'s circumstances, e.g., the nature of their disabilities, their educational needs, or when they were enrolled in the District. (See Compl. ¶¶76-80.) Wholly lacking from Plaintiffs' Complaint are any factual allegations demonstrating how these alleged comparators' circumstances are "prima facie identical" to A.K.'s. See Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing "class of

14

one" claim in the absence of "allegations showing how another person's circumstances are prima facie identical to [those of the plaintiffs' son]" (alteration and internal quotation marks omitted); MB v. Islip Sch. Dist., No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015)("Plaintiffs' conclusory statement that [the comparator] is [ ] similarly situated to [plaintiff student], without any supporting facts to suggest an extremely high degree of similarity between [the two students] is insufficient to establish that no rational person could regard [plaintiff student's] circumstances . . . to differ from those of [the comparator] to a degree that would justify the differential treatment.") (internal quotations omitted); Irwin v. W. Irondequoit Cent. School Dist., 16-CV-06028, 2017 WL 881850, at *6 (W.D.N.Y. March 2, 2017) (dismissing equal protection claim where complaint referenced "other similarly situated students" but failed to set forth any facts explaining how those students' circumstances were similar to plaintiff's).

Notably in this action, with the first group of alleged comparators, Plaintiffs essentially put forth the same claim they alleged in their 2017 action (Case Number 17-CV-0866) -- which this Court dismissed (see Ex. P-1, 2019 Order) – albeit, here, with the addition of students' names. In the prior 2017 case, "in wholly conclusory fashion, Plaintiffs allege[d] that Defendants reflexively outsource[ ] the post-elementary education of every

15

single 'alternatively assessed' special education child like A.K."
(Id. at 49.)   Plaintiffs claimed that "[i]n refusing A.K.'s
enrollment, A.K. became the only child, including all special
education children, to ever have his basic enrollment rights denied
by Defendants." (Id. at 49-50 (internal citations omitted).)   This
Court found that "Plaintiffs fail[ed] to allege how any
'alternatively assessed' child's circumstances are 'prima facie
identical' to A.K.'s or how A.K. was treated differently from any
such child." (Id. at 50.)

Currently, Plaintiffs similarly allege that "not only
was A.K. treated unequally from one similarly situated person, but
rather that he was treated unequally from every single elementary
school graduate that preceded him." (Compl. ¶75 (emphasis
omitted).)   Yet, Plaintiffs offer no facts from which the Court
could analyze the degree of similarity between A.K. and the
"alternatively assessed" students named in the Complaint. See MB,
2015 WL 3756875, at 10; Killoran, 2020 WL 4740498, at *11, n.12
(noting that identifying five special education students by name
in plaintiffs' opposition papers without explaining how they are
similarly situated to A.K. fails to plausibly allege "that at least
one other student whose circumstances are prima facie identical to
those of A.K. was treated differently than A.K."). Put simply,
Plaintiffs' equal protection claim fails for lack of factual
allegations to support their assertion that A.K.'s circumstances

16

are prima facie identical to the alleged comparators.[6]   Ruston,
610 F.3d at 59 (affirming dismissal of "class of one" claim for
failure to "allege specific examples" of similarly situated
comparators).   With nothing more than these conclusory
allegations, Plaintiffs' equal protection claim based on the "pre-
enrollment class" cannot survive a motion to dismiss.[7]

   B.   Post-enrollment Class

      Plaintiffs' allegations with respect to the "post-
enrollment class" fare no better.   Plaintiffs allege that
"defendants treated A.K. unequally . . . by failing to convene a
CSE that meaningfully contemplated his appropriate educational
placement in accord with the requirements of the IDEA." (Compl.
¶135 (emphasis omitted).) They argue "this Court's analysis should
be focused upon the limited question of whether the defendant

---

[6]      Notably, Plaintiffs' contention that "the existing
confidentiality laws, prevented the Plaintiff from further
profiling just how similar he was to the class of people profiled"
does not salvage his claim. (Opp'n at 12.) See Marino v. City
Univ. of N.Y., 18 F. Supp. 3d 320, 341 (E.D.N.Y. 2014)
("Plaintiff's hypothetical and speculative claim that an
investigation into her classmates' performances would reveal that
they were similarly situated" is insufficient to survive a motion
to dismiss.)

[7]  Defendants additionally claim that Plaintiffs' Complaint is
untimely with respect to the allegations that occurred more than
three years prior to their filing of this action. (Supp. Memo. at
13.)   Because the Court finds that Plaintiffs fail to allege a
Section 1983 claim, it need not address the issue of timeliness
with respect to the individual allegations.

district's conduct, found to be violative of the IDEA by IHO Lederman, simultaneously profiles as a violation of the plaintiff's 'equal protection' rights." (Opp'n at 7-8.)

Plaintiffs' contention is misplaced. In order to allege a Section 1983 claim, Plaintiffs must "prove that a constitutional violation occurred 'outside the scope of the IDEA.'" A.K., 2019 WL 4736969, at *16 (quoting Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F. Supp. 83, 102-03 (S.D.N.Y. 1996)). Plaintiffs' allegations fail to do so. In fact, Plaintiffs do not allege that this "post-enrollment class" was treated more favorably than A.K. (See Opp'n at 13, n.9 (acknowledging to be "well aware, that in reality, [A.K.] is arguing that the defendant district also 'summarily dismissed' this 'class' of people as well").) Thus, this first subset of the "post-enrollment class" of comparators are not alleged to have been treated differently than A.K., and for that reason alone, Plaintiffs' allegations do not support a class of one claim.

Additionally, Plaintiffs' allegations with respect to the second subset of the "post-enrollment class"—students who comprise the newly formed special education class—are also insufficient to state an equal protection claim. The three alleged comparator students that comprise this subset class are admittedly three to five years younger than Plaintiff. (Compl. ¶¶175, 186; see also Ex. B.) As discussed supra, in accordance with IHO

Murphy's order, the District submitted an Age Waiver Application on behalf of Plaintiffs, which was subsequently denied by the Department of Education.  (See Exs. B, C.)  Therefore, Plaintiffs' alleged comparator students are not "similarly situated" to A.K. because, unlike A.K., they fall within the state-imposed age restrictions placed upon the class.

Plaintiffs further contend that Defendant District "manipulated [the] age variance application by singularly targeting only younger students than A.K. and by failing to explore the 're-patriation' [of] any older students that the defendant district had previously 'outsourced.'" (Compl. ¶180.)  They claim that "defendants' decision to inequitably and unequally allocate its special education resources towards the education of some students, namely the students within the defendant district[']s 'newly formed class,' but not A.K., highlights how the defendants have violated the IDEA." (Compl. ¶184.)  However, as discussed supra, an IDEA infringement alone is insufficient to state a constitutional violation.  See Evans, 930 F. Supp. at 102-03.  In the absence of any factual allegations of a constitutional violation on the part of Defendants, Plaintiffs' Section 1983 claim fails.  Therefore, Plaintiffs' allegations with regard to the "post-enrollment" comparators fails to state an equal protection claim.

III. <u>Leave to Amend</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Plaintiffs are GRANTED LEAVE TO AMEND their Complaint in accordance with this Memorandum and Order.  In amending their claim, Plaintiffs must provide non-conclusory allegations demonstrating how the alleged comparators are similarly situated to A.K. but were treated differently.  Any Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order and shall be titled "Amended Complaint" and shall bear the same case number as this Memorandum and Order, <u>i.e.</u>, 19-CV-6663(JS)(SIL).  Plaintiffs are cautioned that their failure to timely file an Amended Complaint will lead to the dismissal of their Complaint with prejudice and the closure of this case.

<u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that Defendants' Dismissal Motion is GRANTED, with Plaintiffs' Complaint being DISMISSED WITHOUT PREJUDICE.

IT IS FURHTER ORDERED that Plaintiffs are GRANTED LEAVE TO AMEND their Complaint in accordance with this Memorandum and

Order.  Any Amended Complaint shall: (1) be filed within thirty (30) days from the date of this Memorandum and Order; (2) be titled "Amended Complaint"; and (3) bear the same case number as this Memorandum and Order: 19-CV-6663(JS)(SIL).

IT IS FURTHER ORDERED that the Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiffs and make a notation of such service upon the docket.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  March 25, 2021
        Central Islip, New York