UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,
CHRISTIAN KILLORAN, and
TERRIE KILLORAN

                 Plaintiffs,       <u>MEMORANDUM & ORDER</u>
                                      19-CV-06663(JS)(SIL)

     -against-

WESTHAMPTON BEACH SCHOOL
DISTRICT; MICHAEL RADDAY,
as Superintendent;
SUZANNE M. MENSCH, JAMES HULME,
JOYCE L. DONNESON, GEORGE R. KAST, JR.,
and HALSEY C. STEVENS, as Board
of Education Members,

                 Defendants.
---------------------------------x
For Plaintiffs:     Christian Killoran, Esq., <u>pro se</u>
                   Terrie Killoran, <u>pro se</u>
                   132-13 Main Street
                   Westhampton Beach, New York 11978

For Defendants:     Scott J. Kreppein, Esq.
                   DEVITT SPELLMAN BARRETT, LLP
                   50 Route 111
                   Smithtown, New York 11787

SEYBERT, District Judge:

        <u>Pro se</u> plaintiffs Christian Killoran and Terrie Killoran (together, "the Parents"), individually and as parents to A.K., a child with Down Syndrome, (collectively, the Plaintiffs") commenced this action against defendants Westhampton Beach School District ("Westhampton" or the "District"), Michael Radday ("the Superintendent"), Suzanne M. Mensch, James Hulme, Joyce L.

Donneson, George R. Kast, Jr., and Halsey C. Stevens (i.e., the School Board) (collectively with Westhampton and the Superintendent, "Defendants"). Plaintiffs' Amended Complaint purports to allege an equal protection claim pursuant to 42 U.S.C. § 1983 ("Section 1983"). (See Am. Compl., ECF No. 19.) Plaintiffs seek monetary damages and equitable relief.

Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint (hereafter, "Dismissal Motion"). (See ECF No. 24; see also Support Memo, ECF No. 24-2.) After careful consideration, for the reasons stated herein, Defendants' Dismissal Motion is GRANTED.

BACKGROUND

I.   Factual Background[1]

The parties and the Court are familiar with the extensive facts underlying the present litigation. In the interest of brevity, only the proceedings relevant to the issues presented in the parties' motions are discussed below.[2]

---

[1] The facts set forth herein are taken from the Amended Complaint, as well as the documents attached to it as exhibits, and are accepted as true for purposes of the instant motion. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Additionally, a document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

[2] For ease of reference, the Court cites to the Electronic Case Filing System ("ECF") pagination.

A.K., who was born with Down syndrome, completed the sixth grade in 2015 in his home school district, the Remsenburg-Speonk School District ("Remsenburg"). (Am. Compl. ¶¶ 15, 63; see also Jan. 26, 2017 Order of Independent Hearing Officer ("IHO") Nancy M. Lederman ("IHO Lederman") (hereafter, "Lederman Order"), ECF No. 24-4, at 8, attached to Kreppein Decl., ECF No. 24-1.) Remsenburg contracts with Defendant District and the Eastport-South Manor School District ("Eastport") to educate its middle and high school students. (Am. Compl. ¶¶ 15-16; Lederman Order at 5.) Despite Plaintiffs' interest in sending A.K. to Defendant District for middle school for the 2015-2016 academic year, Remsenburg's initial individualized education plan ("IEP") for A.K. recommended his placement in an 8:1:1 program in Eastport. (See Am. Compl. ¶¶ 21-22; Lederman Order at 7-9.) Following Plaintiffs' administrative challenge of Remsenburg's placement decision, Remsenburg modified A.K.'s IEP and recommended that Westhampton implement an individualized program to accommodate A.K.'s placement. (Lederman Order at 8-9.) Westhampton declined to enroll A.K.; subsequently, additional administrative proceedings ensued as to the 2015-2016 and 2016-2017 school years. (See Am. Compl. ¶¶ 21-24; Lederman Order at 8-9, 25, 31.)

In September 2016, at IHO Lederman's direction, Westhampton enrolled A.K. and convened a Committee on Special Education ("CSE"). (Am. Compl. ¶¶ 72-73.) The CSE recommended

3

that A.K. be placed in a program in Eastport for the 2016-2017 school year.  (Lederman Order at 25.)  Plaintiffs again administratively challenged the District's recommendation.  (See id. at 31.)  Thereafter, IHO Lederman found that Westhampton had failed to provide A.K. with a free and appropriate education ("FAPE") for the 2015-2016 and 2016-2017 academic years.  (Am. Compl. ¶¶ 5-7, 19; Lederman Order at 41.)

At some point following the commencement of Plaintiffs' claims against the Defendants, the District implemented a class that educated two or three alternately assessed special education students at the middle school level.  (Am. Compl. ¶¶ 80-81.) Because the students in this newly formed special education class were younger than A.K., who was of high school age, an age waiver was required to admit A.K. to this middle school program. (See Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-6663, 2021 WL 1146078, at *3 (E.D.N.Y. Mar. 25, 2021) (hereafter, the "Prior Order").[3]  The District refused to apply for the age waiver.  (See id.)  Thereafter, IHO Leah L. Murphy ("IHO Murphy") concluded that "[t]he District violated A.K. and his parents' procedural rights pursuant to the IDEA, when it failed to include them in a discussion regarding a decision to apply for an age variance . . . and rejected their request to seek a waiver."  (Id.)  Thus, on

---

[3]  While the Prior Order is docketed in this case at ECF No. 18, when citing to it herein, the Court will use Westlaw pin citations.

August 3, 2018, she issued an interim order compelling Defendant District to apply for the age waiver.  (See id.; Am. Compl. ¶ 83.) The District complied and submitted the age variance to the New York State Education Department, which denied the requested waiver finding it "lack[ed] an educational justification that support[ed] exceeding the 36-month age range in this class."  (Prior Order at 3.)

## II.  Procedural Background

In a prior action, Case No. 17-CV-0866 (hereafter, the "2017 Action"), on August 15, 2018, Plaintiffs raised a class-of-one equal protection claim via their second amended consolidated complaint.  (See A.K. v. Westhampton Beach Sch. Dist., No. 17-CV-0866, Second Am. Compl., ECF No. 52 (E.D.N.Y. Aug. 15, 2018).)  On September 7, 2019, the Court granted, without prejudice, Defendants' Rule 12(c) motion for judgment on the pleadings regarding Plaintiffs' Section 1983 equal protection-based claim finding that Plaintiffs failed "to plausibly allege that A.K. was treated differently from any similarly situated individual."  A.K. v. Westhampton Beach Sch. Dist., No. 17-CV-0866, 2019 WL 4736969 at * 17 (E.D.N.Y. Sept. 27, 2019) (Hereafter, the "2019 Order").

Instead of repleading their equal protection claim in the 2017 Action, on November 26, 2019, Plaintiffs brought the instant action against Defendants purportedly alleging a class-of-one equal protection claim pursuant to Section 1983.  (See ECF

No. 1.)  On March 25, 2021, the Court granted Defendants' Rule 12(b)(6) motion to dismiss the complaint without prejudice and provided Plaintiffs with the opportunity to replead.  (See Prior Order at 7.)  Specifically, the Court directed that "in amending their claim, Plaintiffs must provide non-conclusory allegations demonstrating how the alleged comparators are similarly situated to A.K. but were treated differently."  (Id.)

On April 22, 2021, Plaintiffs filed an Amended Complaint again purporting to allege an equal protection claim pursuant to Section 1983.  (See Am. Compl., ECF No. 19.)  On June 24, 2021, Defendants filed the instant Dismissal Motion.  (See Dismissal Motion, ECF No. 24.)  Plaintiffs filed their opposition to the Motion on June 30, 2021.  (See Opp'n., ECF No. 25.)

DISCUSSION

I.  <u>Standard of Review</u>

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> (internal quotation marks and citation omitted).  Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable

6

to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. In turn, "[p]lausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011) (citing Iqbal, 556 U.S. at 674-84).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

Further, it is well-established that pleadings filed by pro se plaintiffs are held "to less stringent standards than formal

7

pleadings drafted by lawyers[.]" <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). However, where, as here, an attorney is proceeding <u>pro se</u>, his pleadings are not entitled to the "special consideration which the courts customarily grant to <u>pro se</u> parties." <u>Bazadier v. McAlary</u>, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted); <u>see also</u> <u>Killoran v. Westhampton Beach Sch. Dist.</u>, No. 19-CV-3298, 2020 WL 4740498, at *4 (E.D.N.Y. June 24, 2020) ("[T]he Court takes notice that Plaintiff [Christian Killoran], although proceeding <u>pro se</u>, is a registered attorney.") <u>report and recommendation adopted</u>, 2020 WL 4743189 (E.D.N.Y. July 27, 2020). Accordingly, although Plaintiff is proceeding <u>pro se</u>, his Amended Complaint is held to the same standards as pleadings drafted by lawyers. <u>See</u> <u>Bazadier</u>, 464 F. App'x at 12.

II. <u>Section 1983 Equal Protection Claim</u>

Plaintiffs' Amended Complaint contains substantially similar allegations to their original complaint, alleging that A.K. is similarly situated to both pre-enrolled and post-enrolled Remsenburg graduates. For the reasons discussed <u>infra</u>, the Court finds that Plaintiffs' Amended Complaint fails to state a cognizable claim upon which relief can be granted.

Pursuant to the Fourteenth Amendment's Equal Protection Clause, the Government must treat "all similarly situated people alike." <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494,

499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  The protections afforded by the Equal Protection Clause extend to "individuals who allege no specific class membership[,]" known as "class of one claims[,]" "where the plaintiff alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

To prevail on a "class of one" claim, "'the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are 'prima facie identical' in all other respects.'"  MB v. Islip Sch. Dist., No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015) (cleaned up); see also Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (emphasis added)).  More specifically, a plaintiff must establish that he and a comparator are "prima facie identical" by showing:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to

> exclude the possibility that the defendant
> acted on the basis of a mistake.

Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59-60 (2d
Cir. 2010), cert. denied, 562 U.S. 1108 (2010) (quoting Clubside,
468 F.3d at 159).

　　　　To survive a motion to dismiss, a complaint must make
sufficient factual allegations in support of this similarity
requirement.  See Ruston, 610 F.3d at 59 (citing Iqbal, 556 U.S.
at 678.)  Courts require "more than a bare allegation that other
individuals were treated differently."  Vaher v. Town of
Orangetown, N.Y., 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013)
(citation omitted).  "[T]he court must [ ] determine whether, based
on a plaintiff's allegations in the complaint, it is plausible
that a jury could ultimately determine that the comparators are
similarly situated."  Id. at 434 (quoting Mosdos Chofetz Chaim,
Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 697-98
(S.D.N.Y. 2011)).

　　　　Of relevance to this action, the Second Circuit recently
recognized "that '[t]here is no precise formula to determine
whether an individual is similarly situated to comparators.'"  Hu
v. City of N.Y., 927 F.3d 81, 97 (2d Cir. 2019) (quoting McDonald
v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004); citing
Lindquist v. City of Pasadena, Texas, 669 F.3d 225, 234 (5th Cir.
2012) ("[T]he inquiry is case-specific and requires us to consider

the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision." (citation omitted))). The Hu Court instructed that the "question of 'whether parties are similarly situated is [generally] a fact-intensive inquiry' that depends heavily on the particular context of the case at hand." Id. (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006); citing Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004) ("Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case.")).

Plaintiffs have not met this standard.[4]  In support of their class-of-one equal protection claim, Plaintiffs reference two groups of students as proposed comparators.  The first group of alleged comparators include Remsenburg graduates who applied for enrollment within the Defendant District, but, unlike A.K., were enrolled by the District (hereafter, the "Pre-Enrollment Class").  (Am. Compl. ¶¶ 10, 15-70.)  Plaintiffs further divide the Pre-Enrollment Class into what they label as "typical" students

---

[4] The Court notes that Plaintiffs' contention that "the defendants have the burden of establishing that the 'comparators' are different to a degree that would justify the defendants' unequal treatment" is incorrect.  (Am. Compl. ¶ 93 n.11 (emphasis in original).)  See Ruston, 610 F.3d at 59 ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (emphases added)).

and "non-typical" -- or special education -- students.   (Id. ¶
38.)

The second group of alleged comparators include
alternately assessed special education students enrolled in the
District, (hereafter, the "Post-Enrollment Class") which
Plaintiffs divide into two sub-groups: (1) "alternately assessed
special education students" from Remsenburg and other sending
districts, who, unlike A.K., following enrollment in the District,
"did not have their educational placements 'pre-determined' by the
defendant district's CSE" (id. ¶¶ 11, 76); and (2) four identified
students, three of whom, like A.K., have Down Syndrome, but, unlike
A.K., are being educated in the District's "Middle School
alternately assessed special education class." (Id. ¶¶ 12, 78-
96.)  Plaintiffs contend that "the only discernable difference
between himself and these other 'alternately assessed special
education students,'. . . was that [ ] A.K., had voiced his
intention to challenge the defendant district's historic and
discriminatory and reflexive policy of 'outsourcing' the post-
enrollment, post-elementary education of every single 'alternately
assessed special education student' that has ever come before it."
(Id. ¶¶ 58, 126.)

A.   Pre-Enrollment Class

With respect to the Remsenburg graduates that were
enrolled in the District, Plaintiffs fail to plausibly allege that

12

A.K. was treated differently from any similarly situated individual. The Amended Complaint alleges that A.K. "profiles as being 'similarly situate[d] and/or prima facie identical' to those 'typical' students who graduated from [Remsenburg]" as evidenced by "inherent 'similarities'" including the fact that he was the "same grade-level age," and, had the same "right[ ] to enroll within the defendant district" pursuant to a contract between Remsenburg and the District. (Id. ¶¶ 26-30, 35.) Plaintiffs claim that the only "discernible difference" between A.K. and his "typical" Remsenburg graduating peers was that A.K. [] was disabled." (Id. ¶ 31.)

Such bare allegations of "inherent similarities" are insufficient to show "an extremely high degree of similarity" between A.K. and any one of his "typical" Remsenburg peers. Ruston, 610 F.3d at 60 (affirming dismissal of "class of one" claim for failure to "allege specific examples" of similarly situated comparators); see also Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing class-of-one claim where allegations did no more than assign unnamed non-disabled students the title of "similarly situated").

Further, the existence of a contract between Remsenburg and the District does nothing to plausibly allege a high degree of similarity between A.K. and this group of the alleged comparators.

Moreover, as Defendants contend, the enrollment process for A.K. was "unique."  (See Support Memo at 7 ("AK took a unique path towards requesting enrollment, and thus is not similar to the other students who were ministerially enrolled via their elementary schools sending enrollment packets to [Westhampton].")  While the CSE recommended A.K.'s placement in Eastport, the Plaintiffs sought his enrollment in Westhampton.  (See Lederman Order at 10.) As to that requested enrollment, "[w]hile no student had ever been refused enrollment, it was also true that upon a placement recommendation in another district[,] enrollment in Westhampton Beach had never been sought."  (Id. at 11.[5])   These distinct

---

[5]   Earlier in her Order, IHO Lederman stated:

> Superintendent Radday characterized the situation for AK as <u>unique</u>, in that Remsenburg-Speonk made a recommendation for the Eastport-South Manor school district, also a school district for which Remsenburg-Speonk had an instruction contract, stating that they had never [s]een a circumstance where a recommendation for another district with a secondary education contract had nevertheless requested that the student be enrolled in Westhampton. . . .  He emphasized that the recommendation for Eastport-South Manor, a district with which Remsenburg-Speonk had a tuition contract, made the circumstance <u>unique</u>.  Ms. Ambrosini also noted the [D]istrict had never had a request for enrollment for a student placed in Eastport-South Manor school district and thought that the recommendation for Eastport South Manor would indicate enrollment in that district.

circumstances demonstrate that Plaintiffs' proposed "typical" Remsenburg graduates are not similarly situated to A.K.

Moreover, Plaintiffs' allegation that A.K. is "particularly similarly situate[d] and/or prima-facially identical" to his "non-typical" special education Remsenburg graduate peers, who, unlike A.K., were afforded enrollment within the district (see Am. Compl. ¶ 38), is nearly identical to both the allegations in their original complaint in this action and the allegations in their complaint in their 2017 Action, which were both dismissed by this Court. (See Prior Order at 5-6; 2019 Order at 49-50.)  In its Prior Order dismissing Plaintiffs' original complaint in this action, the Court found that aside from "identify[ing] the 'Remsenburg graduates' 'special education students' by name," Plaintiffs "fail[ed] to set forth any facts that identify how the circumstances of these students are similar to A.K.'s circumstances, e.g., the nature of their disabilities, their educational needs, or when they were enrolled in the District." (Prior Order at 5 (citing Compl.).)

---

(Lederman Order at 9-10.)  IHO Lederman also clarified:  "There was no discussion regarding [such] enrollment, because participants were so focused on placement and program.  Ms. Achilich acknowledged that because of the parents' insistence on Westhampton Beach and the focus on where AK would attend, there was no breakdown of the difference between enrollment and placement and program discussed."  (Id. at 11.)

Now, attempting to remedy their prior deficient allegations, Plaintiffs allege that all "'alternately assessed special education students' share certain uniform and/or universal characteristics," including, but not limited to: similar IQ proficiencies (see Am. Compl. ¶ 46); the need for an IEP (see id. ¶ 43); the receipt of related services and educational accommodations, behavioral modification plans, modified curriculum, transitional planning and services (see id. ¶¶ 47-49); and the requirement that they meet strict eligibility criteria to be classified as severely disabled (see id. ¶ 52). Plaintiffs contend that these shared characteristics establish that all alternately assessed students are "particularly similarly situate[d] and/or prima-facially identical" for purposes of establishing a class-of-one claim. (Id. ¶ 41; Opp'n. at 10.)

However, such "naked assertion[s] devoid of further factual enhancement" will not survive a motion to dismiss. Iqbal, 556 U.S. at 678. In the context of a case involving alternately assessed special education students, the fact that all special education students are entitled to receive additional services, without more, fails to demonstrate that A.K. is "prima facie identical" to all of his "non-typical" peers for the purposes of stating a class-of-one claim. Cf. Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 341 (E.D.N.Y. 2014) (finding allegations that "all students in [plaintiff's] seminar [class] were subject to the

16

same curriculum, syllabus, grading requirements, mandatory student teaching, and overall course instructor" were too conclusory to show "the high degree of similarity required" to state a cognizable class of one-claim).  Like the original complaint, the Amended Complaint fails to address the specific nature of the disabilities or educational needs of any "non-typical" alleged comparator. Rather, they offer general allegations of prima facie identicalness, e.g.: "all of the students are 'alternately assessed'" (Am. Compl. ¶ 102); "all of the students require related services" (id. ¶ 103); "all of the students require an aide" (id. ¶ 104); "all of the students are working towards achieving a graduating 'skills and achievement commencement credential'" (id. ¶ 105); "all of the students are utilizing curriculum that is focused on the NYS learning standards . . . along with a focus upon developing the social skills and activities of functional daily living" (id. ¶ 107); and, "all of the students are working upon mastering 'foundational' and/or 'pre-curser' skills" (id. ¶ 108).  As in Marino, such allegations are too conclusory to plausibly allege the extremely high degree of similarity required to state a cognizable class-of-one claim.[6]  See also Hu, 927 F.3d

---

[6]  This conclusion applies equally to the general, conclusory allegations contained in footnote 15 of the Amended Complaint. (Am. Compl. ¶ 109 n.15 (asserting all "alternately assessed" students: "rank in the similar IQ percentile" as A.K.; "have remarkably similar IEPs"; "rank comparably on all evaluating testing methodologies"; and "have all been recommended for a

at 97 ("[W]hether parties are similarly situated is generally a fact-intensive inquiry that depends heavily on the particular context of the case at hand." (cleaned up)).

Further, to the extent Plaintiffs rely upon the District's age variance application (hereafter, the "Variance Application") to establish the requisite extremely high degree of similarity, that reliance is misplaced. (See Am. Compl. ¶¶ 98-101, and n.13; see also Ex. P-1, Variance Application, attached to Am. Compl.) Contrary to Plaintiffs' contention that the Variance Application highlights A.K.'s striking similarity to other alternately assessed special education students within the District (see id. ¶ 109), it undercuts such claim, highlighting the differences between A.K.'s assessments and needs with those comparator students included in the Variance Application. (See Variance Application.) Moreover, Plaintiffs' allegation that at least one of the other students profiled in the Variance Application is "now over 15 years old" and "require[s] 'transitional embedding'" (Am. Comp. ¶ 106[7]), without more, is not

_____

special class setting in a 12:1:1 format").)  In the special education context, these assertions do not plausibly allege an extremely high degree of similarity between A.K.'s "non-typical" special education peers and A.K.

[7]   Plaintiffs note that "the [V]ariance [A]pplication was formulated in 2018." (Am. Compl. ¶ 106 n.14.)  Since that time "at least 1 of the students therein is over 15 and thus does in fact require 'transitional embeddings'." (Id.)  No further facts are alleged.  And, regardless of that change, it does not eliminate

enough to allege an extremely high degree of similarity between that student and A.K. such that Plaintiffs have plausibly alleged a class-of-one equal protection cause of action.

Furthermore, Plaintiffs' reference to H.R., a Remsenburg graduate with Down Syndrome, fails to remedy their pleading deficiency.  According to Plaintiffs, H.R. has a "particularized similarity" with A.K. because of the "shared [physical and cognitive] 'characteristics,'" of people with Down Syndrome.  (Am. Compl. ¶¶ 61-68.)  However, individuals with Down Syndrome present a broad range of physical, cognitive and social characteristics and abilities.  See, e.g., Mayo Clinic, Down Syndrome, Symptoms & Causes, Overview ("Down syndrome varies in severity among individuals, causing lifelong intellectual disability and developmental delays.  It's the most common genetic chromosomal disorder and cause of learning disabilities in children.  It also commonly causes other medical abnormalities, including heart and gastrointestinal                                       disorders."), https://www.mayoclinic.org/diseases-conditions/down-syndrome/symptoms-causes/syc-20355977 (last visited May 24, 2022).  Therefore, this allegation does not suffice to maintain a class-

---

the more than three-year age difference between that student and A.K., which age difference supports the District's decision not to place A.K. with allegedly similarly situated alternately assessed special education students.

of-one equal protection claim. Moreover, Plaintiffs' speculative allegation that "a comparative analysis of the respective IEP's of H.R. and A.K. will reveal a striking degree of similarity shared between such students" (id. ¶ 69) is insufficient to plausibly allege that H.R. is prima facie identical to A.K. See Marino, 18 F. Supp. 3d at 341 ("Plaintiff's hypothetical and speculative claim that an investigation into her classmates' performances would reveal that they were similarly situated" is insufficient to survive a motion to dismiss.); Killoran, 2020 WL 4740498, at *11, n.12 (noting that identifying five special education students by name without explaining how they are similarly situated to A.K. fails to plausibly allege "that at least one other student whose circumstances are prima facie identical to those of A.K. was treated differently than A.K."). Thus, the Amended Complaint does not cure the deficiencies of Plaintiffs' original complaint since it lacks plausibly alleged facts from which the Court is able to analyze an extremely high degree of similarity between A.K. and H.R. or any of his other "non-typical" peers.

In sum, because Plaintiffs fail to allege how A.K.'s circumstances are prima facie identical to either "typical" or "non-typical" Remsenburg graduates, Plaintiffs' equal protection claim based on this Pre-Enrollment Class cannot survive a motion to dismiss.

B.   <u>Post-Enrollment Class</u>

Plaintiffs' allegations with respect to the Post-Enrollment Class are also insufficient to state a class-of-one equal protection claim.

Plaintiffs allege that the District treated A.K. unequally from all other Remsenburg graduates even after his enrollment within the District, and, specifically, within the context of its October 2016 CSE for which IHO Lederman found a FAPE violation.   (Am. Compl. ¶¶ 71-76; Opp'n. at 24-25.)   This Court has repeatedly rejected Plaintiffs' attempts to base their equal protection claim on IHO Lederman's finding of FAPE violations.   (<u>See, e.g.</u>, 2019 Order at 16; Prior Order at 6.) Rather, in order to allege a Section 1983 equal protection claim, Plaintiffs must "prove that a constitutional violation occurred 'outside the scope of the IDEA.'"   <u>Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist.</u>, 930 F. Supp. 83, 102-03 (S.D.N.Y. 1996); <u>see also</u> <u>French v. N.Y.S. Dep't of Educ.</u>, No. 04-CV-0434, 2010 WL 3909163, *11 (N.D.N.Y. Sept. 30, 2010) ("Plaintiff's complaint makes clear that the alleged Section 1983 violations are merely a reiteration of his IDEA claims, as they attack Defendant['s] alleged noncompliance with the IDEA and its effects on Plaintiff."), <u>aff'd</u>, 476 F. App'x 468 (2d Cir. 2011).   Once again, Plaintiffs' amended allegations fail to do so.

Like their original complaint, Plaintiffs' Amended Complaint alleges that the District had a "practice and/or policy of outsourcing" the post-elementary education "of every single 'alternately assessed special education student' that has ever come before it." (Am. Compl. ¶¶ 58-59, 79, 89, n.9.) As the Court held in its Prior Order, "this first subset of the 'post-enrollment class' of comparators are not alleged to have been treated <u>differently</u> than A.K., and for that reason alone, Plaintiffs' allegations do not support a class of one claim." (Prior Order at 6) (emphasis added). Therefore, in the absence of any factual allegations of a constitutional violation on the part of Defendants, Plaintiffs' amended allegations with regard to the first sub-group of the "post-enrollment" comparators fails to state an equal protection claim.

Next, Plaintiffs claim that the District "treated [A.K.] unequally following his enrollment by choosing to apply its special education resources towards the education of certain 'alternately assessed special education students' but not [ ] A.K.," and refers to three special education students who, like A.K., have Down Syndrome but are in the middle school's special education class.[8] (Am. Compl. ¶¶ 80-81, 94-96.)

---

[8]   Plaintiffs allege that the alternately assessed special education class is now comprised of approximately four students, including three students with Down Syndrome (<u>see</u> Am. Compl. ¶ 96) and note that the class will be held in the District's high school

In its Prior Order dismissing Plaintiffs' equal protection claim, this Court found that these same "alleged comparator students are not 'similarly situated' to A.K. because, unlike A.K., they fall within the state-imposed age restrictions placed upon the class."  (Prior Order at 7.)  In an attempt to circumvent dismissal here, Plaintiffs now contend that the age disparity between A.K. and the alternately assessed students enrolled in the District's middle school program "should be discarded as a relevant factor" because Plaintiffs are "not arguing for [A.K.'s] inclusion within the 'alternately assessed Middle School special education class' established by the defendant district," but rather seek to hold the District liable for not applying "their special education resources to [A.K.]" by educating him in one of Plaintiffs' suggested "alternative educational formats."  (Am. Compl. ¶¶ 87-88, 92.)

---

and not its middle school (see id. at note 12).  Plaintiffs further note "at least 1 of the students is 15 years of age" and "requires 'transitional embedding'" like A.K.  (Id.)  However, the composition of the current alternately assessed special education class is irrelevant to the instant action and Plaintiffs' present cause of action, which relates to earlier academic years.  Even if that were not so, to the extent the footnoted statement is an allegation, it is also too vague to plausibly allege an extremely high degree of similarity to A.K.  See, e.g., MB, 2015 WL 3756875, at *10 ("Plaintiffs' conclusory statement that [the comparator] is [ ] similarly situated to [plaintiff student], without any supporting facts to suggest an extremely high degree of similarity between [them] is insufficient to establish that no rational person could regard [plaintiff student's] circumstances . . . to differ from those of [the comparator] to a degree that would justify the differential treatment.") (internal quotations omitted).

Defendants contend that Plaintiffs are merely attempting to "reargue A.K.'s placement recommendation, rather than asserting a separate [constitutional] claim that is distinct from [Plaintiffs' prior] IDEA claims." (Support Memo at 15.) They argue that Plaintiffs' assertions that the District be required to adopt their proposed alternative education formats has been repeatedly rejected administratively and those decisions have been upheld by this Court. (Id.) The Court agrees.

Admittedly, the students that comprise the District's middle school special education class, including the three students with Down Syndrome whom Plaintiffs identify, are three to five years younger than A.K. and therefore fall within the state-imposed age restrictions placed upon the class, a fact the Court will not "discard[ ]." (Am. Compl. ¶¶ 83-84; Prior Order at 7.) Plaintiffs' amended pleading refers to the Variance Application itself as evidence of the "similarities" and "'prima facie identical profiles' shared between [ ] A.K. and those students within the defendant district's 'alternately assessed special education [middle school] class.'" (Id. ¶ 98.) Plaintiffs contend that A.K., like all of the students within the District's existing alternately assessed special education class are, for example, "alternately assessed," require an aide and related services, have similar IEPS, rank comparably on all evaluative testing methodologies, are utilizing curriculum that is focused on New

York state learning standards, and were recommended for a special class setting in a 12:1:1 format.  (Am. Compl. ¶¶ 99-109.)  Even ignoring their generalities in nature which still lack the specificity necessary to plausibly allege an extremely high degree of similarity, these new allegations do not dissipate the fact that there remains at least a three-year age difference between the alleged comparators and A.K.[9]  Such an age differential underscores the lack of an extremely high degree of similarity between A.K. and his alleged comparators; on this basis alone, a rational person could regard A.K.'s circumstances to be different to a degree justifying the District's differential treatment, especially since no age variance was granted.  Thus, like their original allegations, Plaintiffs' amended pleadings fail to allege that any of A.K.'s proffered post-enrollment comparators are prima facie identical to A.K.

Finally, Plaintiffs' attempt to relitigate their IDEA claim under the guise of equal protection is unavailing. It is well-settled that parents are entitled to participate in the decision making regarding the educational program of their child but not the "bricks and mortar of the specific school."  T.Y. &

---

[9]  And, as noted, supra, Plaintiffs' allegation that at least one of the students in the middle school class is now over fifteen-years-old and therefore requires transitional embeddings like A.K. (see Am. Compl. ¶ 106) does not support their equal protection claim given the three-year age gap between A.K. and this alleged comparator.

K.Y. ex rel. T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009); see also F.L. ex rel. F.L. v. N.Y.C. Dep't of Educ., No. 11-CV-5131, 2012 WL 4891748, at *11 (S.D.N.Y. Oct. 16, 2012) ("Parents are entitled to participate in any decision regarding the educational placement of their child.  Parents are not, however, procedurally entitled to participate in the decision regarding school placement.") (citation omitted).  Therefore, Plaintiffs' desire to have A.K. placed in one of their proposed alternative educational formats is not only inappropriate under the IDEA, but also fails to support a constitutional claim.

Accordingly, Plaintiffs' amended allegations regarding the post-enrollment class fail to allege a class-of-one equal protection claim.

**\*\*\***

In sum, as the Defendants aptly argue, the "Plaintiffs' arguments that the school district should cede to their requests to take creative measures to accommodate their location preference, even if not required under the IDEA, because it later formed a special education class for a group of other disabled students under different circumstances is more of a plea to general equity than an argument under the Equal Protection Clause." (Support Memo at 7.)  Accepting all allegations in the Amended Complaint as true, because the Amended Complaint does not contain sufficient factual content showing A.K. and his alleged

comparators share the requisite extremely high degree of similarity, Plaintiffs have failed to state a plausible class-of-one equal protection claim.   Hence, the Court cannot draw a subsequent reasonable inference that the Defendants are liable for the alleged equal protection violation, thereby warranting the granting of Defendants' Dismissal Motion.

III.   Leave to Amend

        The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."   Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").   However, "an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend."   Roache v. Fischer, No. 18-CV-0825, 2019 WL 6827296, at *5 n.12 (N.D.N.Y. Dec. 13, 2019) (citing Shuler v. Brown, No. 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. Mar. 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.")); see also Yang v. N.Y.C. Trans. Auth., No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); Advanced Marine Tech. v. Burnham Sec., Inc., 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (same).

Since Plaintiffs were afforded two opportunities to amend their Equal Protection claim, the Court finds that leave to further amend would be futile and is therefore DENIED.

<u>CONCLUSION</u>

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Dismissal Motion (ECF No. 24) is **GRANTED** and the Amended Complaint is DISMISSED WITH PREJUDICE. Judgment shall enter in favor of Defendants.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to mail a copy of this Memorandum and Order to the <u>pro se</u> Plaintiffs.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   August _10_, 2022
         Central Islip, New York